In view of the provision in the lease which permitted the lessee to remove improvements made by such lessee during the term of the lease, or to be reimbursed therefor by the lessor upon termination of the lease, the partnership not only retained title to such improvements during the term of the lease, but had the right to remove them or be reimbursed therefor at the expiration of the term. *Appeal of Frank G. Shattuck Co.*, 2 B. T. A. 7.

With reference to the machinery, apparatus and equipment, there can be no question. It was purchased by the partnership, with partnership funds, for use in the partnership business and, being removable property, it was not in any way affected by the lease or the nature of the tenancy.

The mere fact that the amounts expended for the property in question were charged off on the partnership books as ordinary business expenses, does not make them any the less capital expenditures. The true nature of a transaction can not be changed by a mere bookkeeping entry. The same may be said with reference to the treatment of the property on the list filed in probate court.

In determining the partnership profits and the distributive shares of the taxpayers, the cost of the assets involved in these appeals, less depreciation to December 31, 1916, should be included in partnership invested capital for the purpose of computing excess-profits taxes for the year 1917, and reasonable allowance should be made for all years for the exhaustion, wear and tear of these properties.

In the appeal of Louis W. Cullum there is an additional question as to whether or not certain amounts claimed as losses and bad debts are properly deductible from income. With reference to these items the taxpayer has not adduced sufficient evidence to justify the Board in ruling that they are allowable deductions within the meaning of the law.

---

## Appeal of OHIO VALLEY TIE CO.

Docket No. 3433. Submitted June 25, 1925. Decided January 16, 1926.

*Camden R. McAtee, Esq.*, for the taxpayer.
*L. C. Mitchell, Esq.*, for the Commissioner.

Before MARQUETTE and MORRIS.

This appeal is from the determination of a deficiency in income and profits taxes for the eight-month period ended October 31, 1917, in the amount of $412.47; an overassessment of $1,097.75 for the fiscal period ended August 31, 1918, and no tax liability for the fiscal

year 1919 having been found. The taxpayer claims that the Commissioner erred in disallowing as a deduction $1,200 interest paid in each of the said years.

## FINDINGS OF FACT.

The taxpayer is a Kentucky corporation with its principal office in Louisville. On October 7, 1910, the following written contract was executed by and between certain stockholders of the Ohio Valley Tie Co.:

THIS CONTRACT entered into this 7th day of October, 1910, between Augusta F. McCracken of first part, in her own right and as executrix and sole legatee and advisee [sic] under the will of A. M. McCracken, deceased (hereinafter called Mrs. McCracken), and C. P. Bush of the second part, and Mr. W. Ford, J. H. Dean, W. P. Semple, H. M. McCracken, W. B. Fowlkes and S. B. Lynd, hereinafter called " Associates ", as parties of the third part, bears witness:

WHEREAS, Mr. Bush on September 7, 1910 by written contract of that date with Mrs. McCracken purchased from her 225 shares of stock in the Ohio Valley Tie Company, upon the terms stated in said contract, including in such purchase the 200 shares of stock standing in the name of A. M. McCracken on the books of the corporation, and also his one-half interest in 50 shares of stock of the Ohio Valley Tie Company standing in the name of J. H. Dean on the books of said corporation, and

WHEREAS, such purchase was made by Mr. Bush for the benefit of himself and his "Associates" hereinbefore named, parties of the third part, and whereas Mr. Bush and "Associates" are now the owners of preferred stock of the Ohio Valley Tie Company of the par value of Fifty Thousand Dollars ($50,000.00) which Mrs. McCracken desires to acquire as an investment.

Now THIS INDENTURE WITNESSETH that Bush and his "Associates" have this day assigned and transferred to Mrs. McCracken all their interest in the preferred stock of the Ohio Valley Tie Company, being the entire issue of preferred stock of the par value of Fifty Thousand Dollars ($50,000.00), and in addition thereto, said Bush has executed and delivered to Mrs. McCracken his obligation for the principal sum of Twenty-Thousand Dollars ($20,000.) payable in four equal installments of Five Thousand Dollars ($5,000.00) each in one, two, three and four years respectively from October 1, 1910, and said Bush has also pledged to Mrs. McCracken as security for said obligation 250 shares of his common stock in the Ohio Valley Tie Company of the par value of Twenty-five Thousand Dollars ($25,000.00), and in consideration of the premises Mrs. McCracken has this day released said Bush and his "Associates" from all the obligations imposed upon them, or any of them, by said written contract of September 7, 1910, between Augusta F. McCracken and C. P. Bush.

IT IS FURTHER AGREED herein between said Bush and his "Associates" above named that in view of the fact that the purchase of Mrs. McCracken's stock was in part for the benefit of the "Associates" said "Associates" hereby agree with said Bush each for himself and not one for the other, to assume and pay said Bush such portion of his obligation to Mrs. McCracken for Twenty-Thousand Dollars ($20,000.00) and interest as such "Associate's" share in the common stock of the Ohio Valley Tie Company now bears to the total outstanding issue of common stock of said corporation.

The minutes of the meeting on October 7, 1911, of the directors of the taxpayer corporation are as follows:

Mr. Bush, the President, then called the attention of the Board of Directors to the issuance of a contract dated October 7, 1910 (which contract is on file in the record book of the corporation) calling for the payment to Mrs. Augusta F. McCracken, for value received, by said Bush and the other Stockholders of the corporation, the sum of Twenty-Thousand Dollars ($20,000.00) no part of which has been paid, and, pursuant to the terms of the contract aforesaid, on motion of Mr. Bush duly seconded, it was unanimously resolved by the Board of Directors that this corporation do now declare and order paid, out of the earnings and profits of the corporation, a further special dividend of $1,200.00, being for interest at the rate of 6% per annum for one year on the $20,000. owing to Mrs. Augusta F. McCracken as per contract aforesaid.

The minutes of the directors' meeting on October 8, 1912, are as follows:

The attention of the Board of Directors was then called to the existence of a contract dated October 7, 1910 (which contract is on file in the record book of the company) calling for the payment to Mrs. Augusta F. McCracken, for value received, by all the holders of Common Stock in the Company, the sum of Twenty Thousand ($20,000.00) Dollars, no part of which has been paid, and, pursuant to the terms of the contract aforesaid, it was unanimously resolved by the Board of Directors that the Secretary be and he is hereby authorized to pay to said Augusta F. McCracken, out of the earnings of the corporation, one year's interest on said amount at the rate of six per cent (6%) per annum, or Twelve Hundred Dollars ($1,200.00) which amount instead of being handled on the books of the company as a special dividend as heretofore, shall upon the suggestion of Mr. James S. Escott (Auditor) be charged to the Company's current interest account.

The principal of the $20,000 referred to in the said contract was not paid, and the taxpayer during each of the taxable years in question took a deduction of $1,200 as interest paid on the $20,000, which deduction was disallowed by the Commissioner.

DECISION.

The determination of the Commissioner is approved.

---

APPEAL OF VIRGINIA LUMBER & BOX CO.

Docket No. 3546.   Submitted July 15, 1925.   Decided January 16, 1926.

In 1919 taxpayer changed its annual accounting period from a fiscal year ending November 30 to one ending October 31, and filed a return for the 11-month period commencing December 1, 1918, and ending October 31, 1919. The Commissioner denied that he had approved the computation of the net income upon the basis of the new accounting period. *Held*, that the net loss for